UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION 1:17-CR-00204 |
|---|---|
| VERSUS | JUDGE DRELL |
| NATHAN BURL CAIN II, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Defendants Nathan Burl Cain II ("Cain") and Tonia Bandy Cain ("Tonia"), were indicted on six counts of wire fraud and a forfeiture count (Doc. 1). Defendants filed this Motion to Suppress (Doc. 34), seeking to suppress use of evidence seized by an investigator for the Louisiana Office of the Inspector General ("OIG").

Cain was Warden of the Avoyelles Correctional Center ("ACC") in Cottonport, Louisiana from 2012 to May 2016, when he retired. Tonia was employed at ACC through May 2016, when she retired.

In June 2016, Nicole Compton, a criminal investigator with the Louisiana Office of the Inspector General, obtained a search warrant for Defendants' former residence on the grounds of ACC. That house is owned by the State.[1] The United States contends in its brief that the Defendants had left their employment at ACC and vacated the warden's residence (Doc. 38, p. 2/9). In the OIG investigator's search

---

[1] Louisiana Department of Corrections Regulation No. A-06-001, allows "ranking administrative and security staff, maintenance staff, medical/mental health staff, tactical and chase teams and an adequate number of CSO's (Corrections Security Officer) to maintain a ready reserve force" to live in houses provided on the grounds of some prison facilities. The policy authorizes the warden to assign available housing rent-free in a manner that promotes safe, stable, and effective operations.

1

warrant application, the investigator stated the Defendants were no longer employed at ACC, and had "partially vacated the residence" (apparently meaning some things had been left in the house) that is owned by the State (Doc. 34-2, p. 2/5). The Defendants have not stated whether or not they still had possession of the house.

The evidence seized from the house was eventually turned over to the United States Attorney's Office for the Western District of Louisiana, which in turn used it to indict Defendants for wire fraud.

Defendants argue all evidence obtained pursuant to the warrant must be suppressed because the Louisiana Office of the Inspector General does not have the authority to obtain and execute search warrants. The Court must first determine whether Defendants have "standing" to object to the search of their former home on the ground of the Avoyelles Correctional Center.

The parties did not address the issue of "standing."[2] Accordingly,

---

[2] Whether someone has standing to contest the validity of a search "depends on (1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." United States v. Gomez, 276 F.3d 694, 697 (5th Cir. 2001) (citing United States v. Kye Soo Lee, 898 F.2d 1034, 1037-38 (5th Cir. 1990). The defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the place searched. Rawlings v. Kentucky, 448 U.S. at 104. The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. See Rakas v. Illinois, 439 U.S. 128, 131 n. 1 (1978).

The difficult question is whether Defendants' expectation of privacy in a place "is one which society would recognize as reasonable." See Gomez, 276 F.3d at 697–98 (citing Kye Soo Lee, 898 F.2d at 1037-38). Fourth Amendment rights are individually held and cannot be asserted solely by reference to a particular place. The factors to be weighed include: (1) whether the defendant has a possessory interest in the thing seized or the place searched; (2) whether he has the right to exclude others from that place; (3) whether he has exhibited a subjective expectation that it would remain free from governmental invasion; (4) whether he took normal precautions to maintain his privacy; and (5) whether he was legitimately on the premises. See Gomez, 276 F.3d at 697–98 (citing United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir. Unit A Jul. 1981). No one circumstance has a decisive "talismanic" significance. See id.

IT IS ORDERED that Defendants shall file a supplemental brief addressing only the issue of standing **on or before April 30, 2018.**

IT IS FURTHER ORDERED that the United States shall file a supplemental brief addressing only the issue of standing **on or before May 7, 2018.**

THUS ORDERED AND SIGNED in Chambers at Alexandria, Louisiana on this  20th  day of April, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge